86 C.C.P.A.(Patents)

### Application of ROBINSON.
### Patent Appeal No. 5523.

United States Court of Customs and Patent Appeals.
March 1, 1949.

Rehearing Denied April 8, 1949.

Irving F. Goodfriend, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

After having been allowed 17 claims, appellant appealed from a decision of the Board of Appeals of the United States Patent Office affirming final rejection by the Primary Examiner of claims 84, 87 and 88 of an application for a patent defining new and useful improvements in "PROJECTILE METHODS AND MEANS" for lack of invention over the following prior art.

Wilkins, 1,307,607, June 24, 1919.

LeBrun (French), 797,933, February 24, 1936.

The rejected claims read as follows:

"84. In a device of the type described, an elongated body adapted to be directed along a course, normally inoperative discharge means in said body having an outlet arranged to exert a force component to impel said body forwardly upon discharge, normally inoperative energy responsive means and re-directing means on said body for re-directing the body at an angle to said course, and means controlled by said energy responsive means for operating said re-directing means and said discharge means."

"87. In an elongated projectile have a body, adapted to be directed along a course, operative discharge means in said body having an outlet arranged to exert a force component to impell [sic] said body forwardly upon discharge, energy responsive means and re-directing means on said body for redirecting the body at an angle to said course, and means co-operating with said energy responsive means for operating said re-directing means during forward movement of said body, whereby the exerted impelling force would continue to operate on its new course."

"88. In an elongated projectile have a body, adapted to be directed along a course, operative discharge means in said body having an outlet arranged to exert a force component to impell [sic] said body forwardly upon discharge, pick-up means responsive to radiation on said body, re-directing means responsive to the pick-up means on said body for re-directing the body at an angle to said course, and means cooperating with said pick-up means for operating said re-directing means during forward movement of said body whereby the exerted impelling force would continue to operate on its new course."

The invention relates to projectiles, particularly to anti-aircraft shells comprising means for self-direction in its flight to the target. In the nose of the projectile a number of radiant energy responsive means are mounted, each of which is responsive to rays or beams received from a particular direction. When one of those responsive means is affected by the target, a means for directing the shell or projectile toward the target is accomplished. The projectile comprises an explosive jet which impels it toward the target, or the directing means may be a vane projecting from the shell and influenced by the air to divert the shell from a straight flight to a desired direction. At about the time when the direction of the shell is changed, a jet is discharged from its rear which accelerates the movement in the changed direction.

The Wilkins' patent relates to projectiles and particularly to an explosive projectile or shell. It discloses a shell having a secondary propelling charge therein which is fired by means of fuse ignition a short time subsequent to the time that the projectile is fired from a gun. The purpose of the secondary charge is to give the shell an additional forward impulse. There is nothing

in the patent disclosing any means for directing the shell after it has left the gun.

The French patent to LeBrun relates to the change of direction of a projectile toward a specific target after it has left the barrel of the gun from which it is discharged. There is disclosed a projectile which has in the nose thereof a light-sensitive means which when the target is sighted extends one of several vanes from the side of the projectile in such manner that the passing air stream impels the projectile to turn toward the target.

The Primary Examiner rejected the involved claims as unpatentable over the Le-Brun patent in view of the patent to Wilkins, holding that no invention is involved in providing the anti-aircraft shell of the LeBrun patent with a delayed-action rocket type propelling means, as shown in the Wilkins patent. Subsequent to the decision of the examiner finally rejecting the involved claims, appellant requested, pursuant to Patent Office rule 138, that the application be remanded to the Primary Examiner for the purpose of considering three affidavits which had been filed on behalf of appellant. The application was remanded to the Primary Examiner for reconsideration, pursuant to Patent Office rule 76. The examiner in his second statement considered the affidavits in detail, but adhered to his former decision.

It appears that there was a clear difference of opinion between the appellant and the examiner with respect to the meaning of certain language in French appearing in the LeBrun patent reading:

"Ce projectile (fusée d'artifice, obus, torpille, etc.) comporte une enveloppe exterieure 1 qui continent une charge explosive 2."
which according to the examiner's translation reads in English:

"This projectile (rocket, shell, torpedo, etc.) comprises an exterior casing 1 which contains an explosive charge 2."

The difference of opinion arises from the translation of the expression "fusée d'artifice."

Two of the affidavits were made by qualified translators from the French to the English language. According to those translations, the expression "fusée d'artifice" is interpreted to mean a "pyrotechnic fuse," a "time fuse," a "delayed action fuse" or a "powder fuse."

An examination of several standard French-English and English-French dictionaries discloses that the word "fusée" has different recognized English meanings among which are the English words "fuse" and "rocket." The same situation applies to the French word "artifice" which among other meanings is defined as "pyrotechnic." It is clear that the disputed expression may be literally translated as either "pyrotechnic fuse" or "pyrotechnic rocket." Where we have foreign terms with a plurality of recognized meanings, we think it is elementary, as was stated by the examiner, that such terms must be translated in view of the context in which they are used. Therefore, we must consider the text of the LeBrun patent.

That patent relates particularly to a steered anti-aircraft projectile comprising radiant energy responsive means for the purpose of steering the projectile toward an enemy aircraft. There is no disclosure in the patent of a fuse as means for firing the explosive contained therein, and the invention relates solely to the steering of the shell and not to the firing of the explosive carried therein. The words "fusée d'artifice obus, torpille, etc." all preceded by the expression "Ce projectile" quite obviously mean that the "projectile" is generic to those of several types of projectiles and the inclusion of rocket, shell, torpedo merely specify examples of projectiles. In our opinion it can not in reason be considered that a "fuse" is such an example, but clearly a "rocket" is well known to be a recognized form of military projectile. As was said in the examiner's second statement, "It is obvious from the LeBrun disclosure that he is not interested in amusing enemy aviators or the anti-aircraft gunner with a pyrotechnic display, but is interested in directing an explosive charge to the enemy aircraft."

The board in affirming the rejection by the examiner stated that it was immaterial as to what the disputed meaning of the French words may be for the reason that

the claims, as worded, are met by the combination of the references even though the French patent does not disclose a rocket.

We find no error in the decision of the tribunals below.

There can be no question but that the French patent discloses means in a shell for turning the projectile. It is also clear that in the patent to Wilkins there is disclosed a shell which contains a rearwardly directed rocket means. The rocket means does not function until after the time the shell has been fired from the gun, and the purpose of the rocket shown in the patent to Wilkins is to add an additional impulse to the impulse given by the firing of the gun.

It is our opinion, therefore, that even though the projectile of the LeBrun patent is not called a rocket, there can certainly be no invention in applying his directing means to a rocket such as is disclosed in the Wilkins patent.

We have examined with care all of the interesting arguments contained in the brief of counsel for appellant, but do not deem it necessary to discuss the issue in further detail.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.